UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KURT MOHRING,

    Plaintiff,

v.    Case No.:  2:20-cv-912-SPC-MRM

SPEEDWAY, LLC,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Pending before the Court is the Second Joint Renewed Request for Approval of FLSA Settlement Agreement. (Doc. 45). Plaintiff Kurt Mohring and Defendant Speedway, LLC request that the Court approve the parties' most recently amended settlement, and dismiss the case with prejudice. (*Id.* at 1, 4).[1] This is the parties' third bid for court approval. (*See* Docs. 33, 38, 40, 42). Their first two bids did not succeed. (*See* Docs. 39, 41, 43, 44). After careful review of the parties' latest submissions and the record, the Undersigned respectfully recommends that the latest joint motion (Doc. 45) be **GRANTED**.

## BACKGROUND

Plaintiff filed a Complaint on November 18, 2020, asserting two claims under the Fair Labor Standards Act ("FLSA"). (Doc. 1). First, Plaintiff alleges that Defendant failed to pay Plaintiff one and one-half times his hourly wage rate for

---

[1] Pinpoint page citations for documents refer to CM/ECF pagination.

hours worked in excess of forty hours per week.  (*Id*. at 5-6).  Second, Plaintiff alleges that Defendant failed to pay Plaintiff the applicable minimum wage for all hours that he worked in most, if not all, workweeks during his employment.  (*Id*. at 6-7).  In his sworn answers to the Court's interrogatories, Plaintiff claims that he is owed $11,181.32 in unliquidated damages, "plus an equal amount as liquidated damages and reasonable attorneys' fees and costs."  (Doc. 16 at 2 (emphasis omitted)).

On January 29, 2021, Defendants filed an Answer, expressly denying Plaintiff's allegations and asserting multiple affirmative defenses.  (Doc. 13).

On April 30, 2021, the parties filed their first Joint Motion for Approval of Settlement and Motion to Dismiss the Case with Prejudice and Supporting Memorandum of Law, (Doc. 33), attaching their proposed FLSA Settlement Agreement and Release, (Doc. 33-1).  In their joint motion, the parties also noted that they "separately negotiated and agreed to a confidential general release." (*Id*. at 2 n.1).  The Undersigned found that the Court could not determine whether the proposed settlement was a fair and reasonable resolution of the bona fide dispute without reviewing and considering this other documentation.  (Doc. 34 at 3).  Thus, the Undersigned directed the parties to provide supplemental briefing, attaching the confidential general release and explaining the consideration paid in exchange for the release.  (*Id.* at 5).

On July 8, 2021, the parties filed a Joint Brief in Further Support of the Parties' Motion for Approval of Settlement and Motion to Dismiss the Case with Prejudice, (Doc. 38), and attached to it a document titled Confidential Settlement

Agreement and General Release, (Doc. 38-1).  This confidential side agreement turned out to be far more than the mere "confidential general release" that the parties represented it to be in the first joint motion, (*see* Doc. 33 at 2 n.1), because it contained multiple other non-cash concessions in the form of, *inter alia*, a non-disparagement provision, a no re-employment provision, a neutral reference provision, and a Medicare affirmation, hold harmless agreement, and waiver, (*see* Doc. 38-1 at 5-6).

The Undersigned recommended that the parties' first motion be denied without prejudice based on various concerns and issues with the then-proposed settlement.  (*See* Doc. 39).  This prompted the parties to renew their motion and to tender with it an amended settlement agreement addressing the Undersigned's concerns.  (*See* Docs. 40, 42, 42-1).  The Undersigned outright denied the renewed motion without prejudice because the parties failed to address certain language in the amended settlement agreement that appeared to be a non-mutual, general release of claims by Plaintiff.  (*See* Doc. 44 at 1).  This prompted the parties to renew their motion again and to tender with it another amended settlement agreement without the problematic release language.  (*See* Docs. 45, 45-1).

## LEGAL STANDARD

To approve the settlement of FLSA claims, the Court must determine whether the settlement is a "fair and reasonable [resolution] of a bona fide dispute" of the claims raised.  *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir.

3

1982); 29 U.S.C. § 216. There are two ways for a claim under the FLSA to be settled or compromised. *Lynn's Food Stores, Inc.*, 679 F.2d 1350 at 1352-53. The first is under 29 U.S.C. § 216(c), providing for the Secretary of Labor to supervise the payments of unpaid wages owed to employees. *Lynn's Food Stores, Inc.*, 679 F.2d at 1353. The second is under 29 U.S.C. § 216(b) when an action is brought by employees against their employer to recover back wages. *Lynn's Food Stores, Inc.*, 679 F.2d at 1353. When the employees file suit, the proposed settlement must be presented to the district court for the district court's review and determination that the settlement is fair and reasonable. *Id*. at 1353-54. The Eleventh Circuit has found settlements to be permissible when employees sue under the FLSA for back wages. *Id*. at 1354. The Eleventh Circuit held:

> [A lawsuit] provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id*.

Applying these standards, the Undersigned analyzes the terms of the parties' amended FLSA Settlement Agreement and Release (Doc. 45-1).

4

## ANALYSIS

The Undersigned addresses below the bona fide nature of the parties' dispute, the monetary terms of the amended FLSA Settlement Agreement and Release, (Doc. 45-1), the sole non-cash concession in that agreement, and the proposed payment of attorney's fees and costs under that agreement. Notably, paragraph 14 of the amended settlement agreement clearly states that the FLSA settlement agreement is the "sole agreement between the Parties," (Doc. 45-1 at 6; *see also* Doc. 45 at 2-3), and the parties' motion explains that they abandoned all the provisions that the Undersigned found problematic, (*see* Doc. 45 at 2-3). As a result, the Undersigned does not address any of the abandoned provisions that no longer appear in the proposed settlement, including but not limited to the parties' now-abandoned side agreement.

**I.   Bona Fide Dispute**

As before, the Undersigned again finds that a bona fide dispute exists between the parties. In his Complaint, Plaintiff alleges that he regularly worked in excess of forty hours within a work week and that Defendant deprived him of proper overtime compensation. (Doc. 1 at 5-6). Plaintiff also alleges that he was not paid the applicable minimum wage for all hours worked during his employment. (*Id*. at 6-7).

Defendant expressly denies these allegations in its responsive pleading. (*See* Doc. 13 at 4-5).

Thus, the proper focus is whether the terms of the amended settlement agreement (Doc. 45-1) are fair and reasonable.

## II.   The Amended FLSA Settlement Agreement and Release (Doc. 45-1)

### A.   Monetary Terms

Plaintiff alleges that Defendant deprived him of proper compensation for all hours he worked in the majority of workweeks during his employment. (Doc. 1 at 5-7). Rather than alleging a specific sum owed to him, Plaintiff generally requests "overtime compensation in the amount due to him for Plaintiff's time worked in excess of forty (40) hours per workweek" and "minimum wage compensation in the amount due to him for workweeks Plaintiff worked for Defendant but was not compensated [at] a rate equivalent to the applicable minimum wage." (*Id*. at 7). Plaintiff also seeks liquidated damages "in an amount equal to the overtime and/or minimum wage award," "pre-judgment and/or post-judgment interest," and "costs and expenses of this action together with reasonable attorney's and expert fees." (*Id*.). In his sworn answers to the Court's interrogatories, however, Plaintiff claims he is owed a total amount of $11,181.32 in unliquidated damages, "plus an equal amount as liquidated damages and reasonable attorneys' fees and costs." (Doc. 16 at 2 (emphasis omitted)).

The monetary terms of the parties' primary FLSA settlement have not changed. As before, Defendant agrees in the amended settlement agreement to pay a total of $11,900.00, including $2,950.00 for "recovery of wages," $2,950.00 for "recovery of liquidated damages," and $6,000.00 for "recovery of attorneys' fees and costs." (Doc. 45-1 at 2-3).

6

The parties explain in their original motion how they arrived at the monetary terms. (*See* Doc. 33 at 7-8).[2] Specifically, the parties state that while Plaintiff estimates he worked approximately 47 hours per week, Defendant's records show that Plaintiff worked 37 hours or less in approximately 49 workweeks. (*Id*. at 7). Given this discrepancy, the parties conclude that "it may be unlikely that a jury would give credence to [Plaintiff's] estimation that he worked 47 hours in every work week [sic]." (*Id*.). Further, because Defendant's records show that Plaintiff was in fact paid for overtime in approximately 28 workweeks, "Plaintiff recognizes that his assertion that he worked 47 hours during each work week [sic] without proper overtime pay may not be believed." (*Id*. at 7-8). The parties explain that the settlement amount was ultimately calculated by removing from the equation those workweeks where Defendant's records show that Plaintiff worked less than 37 hours and estimating Plaintiff's damages at 44 hours per week. (*Id*. at 8). Under these calculations, the parties conclude that Plaintiff would be owed approximately $2,625.65. (*Id*.). Thus, the parties assert that Plaintiff's recovery of $2,950.00 in unliquidated damages and an equal amount in liquidated damages is a fair and reasonable resolution of the dispute. (*See id.*).

The parties make other arguments in support of the reasonableness of the monetary terms. (*Id.* at 4-6). First, the parties note that each party was

---

[2] The current motion incorporates the arguments made in the first motion "as to why the consideration, non-cash concessions, and attorneys' fees warrant approval of the Amended FLSA Settlement Agreement." (*See* Doc. 45 at 4 (citing Doc. 33)).

7

independently represented by counsel with extensive experience in litigating FLSA claims. (*Id*. at 4). Second, the parties contend they could make "educated and informed decisions" by "conferring in good faith and putting forth their best efforts, including reviewing and discussing relevant pay and time records." (*Id*. at 6 (emphasis omitted)). Third, the parties assert that they "continue to disagree over the merits of the claim" and that Plaintiff's probability of success on the merits is uncertain. (*Id*. at 5, 6).

Based on the parties' statements, the Undersigned finds that the monetary terms of the amended FLSA Settlement Agreement and Release (Doc. 45-1) are fair and reasonable. (*See id*. at 4-8). Thus, the Undersigned recommends that the presiding United States District Judge approve the monetary terms of the latest proposed settlement.

### B. Non-Cash Concession in the Form of a Release of Wage and Hour Claims

The amended FLSA Settlement Agreement and Release still contains a Release of Wage and Hour Claims provision. (Doc. 33-1 at 3-4). The release includes these claims:

> The Fair Labor Standards Act, as amended; [t]he Florida Minimum Wage Act and any other Florida wage payment laws; Fla. Stat. § 448.08; [a]ny other federal, state or local regulation or ordinance relating to wages and/or compensation; [a]ny public policy, contract, tort, or common law claims for wages and/or compensation; and [a]ny claim for costs, fees, or other expenses including attorneys' fees incurred in these matters[.]

(*Id*. at 4 (modified to omit enumeration)).

Although general releases in FLSA settlement agreements are problematic, *see Serbonich v. Pacifica Fort Myers, LLC*, No. 2:17-cv-528-FtM-29MRM, 2018 WL 2440542, at *3 (M.D. Fla. May 29, 2018), *report and recommendation adopted*, 2018 WL 2451845 (M.D. Fla. May 31, 2018), this specific provision is narrowly tailored to release only wage and hour claims.  Because this release is so limited, any concern about broad or general releases does not exist and the limited release does not preclude approval of the proposed settlement.  *See Monserrate v. Hartford Fire Ins. Co.*, No. 6:14-cv-149-Orl-37GJK, 2016 WL 8669879, at *4 (M.D. Fla. Sept. 23, 2016), *report and recommendation adopted*, No. 6:14-cv-149-Orl-37GJK, 2016 WL 5746376 (M.D. Fla. Oct. 4, 2016) (approving a release that is limited to claims arising under the FLSA).

### C.   Attorney's Fees and Costs

As before, the amended FLSA Settlement Agreement and Release specifies that Defendant will pay $6,000.00 for "attorneys' fees and costs."  (Doc. 33-1 at 3).  The parties state in their original motion that "[t]he attorney's fees and costs that the Parties agreed upon for Plaintiff's counsel[] were negotiated separately from and without regard to the settlement sums being paid to Plaintiff."  (Doc. 33 at 8 (citation omitted)).

As United States District Judge Gregory A. Presnell explained in *Bonetti v. Embarq Management Company*:

> [T]he best way to insure that no conflict [of interest between an attorney's economic interests and those of his client] has tainted the settlement is for the parties to reach agreement

9

> as to the plaintiff's recovery before the fees of the plaintiff's counsel are considered. If these matters are addressed independently and seriatim, there is no reason to assume that the lawyer's fee has influenced the reasonableness of the plaintiff's settlement.
>
> In sum, if the parties submit a proposed FLSA settlement that, (1) constitutes a compromise of the plaintiff's claims; (2) makes full and adequate disclosure of the terms of settlement, including the factors and reasons considered in reaching [the] same and justifying the compromise of the plaintiff's claims; and (3) represents that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.

715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009).

Given the procedural posture of the case, the amount of fees and costs appears fair and reasonable. Additionally, based on the parties' representations, the Undersigned finds that the parties agreed upon the attorney's fees and costs without compromising the amount paid to Plaintiff.

## CONCLUSION

For these reasons, the Undersigned **RESPECTFULLY RECOMMENDS** that:

1. The parties' Second Joint Renewed Request for Approval of FLSA Settlement Agreement (Doc. 45) be **GRANTED**.

10

2. The parties' amended FLSA Settlement Agreement and Release (Doc. 45-1) be approved as a fair and reasonable resolution of a bona fide dispute about Plaintiff's FLSA claims; and

3. The Clerk of Court be directed to dismiss this action with prejudice, terminate all pending motions, and close the file.

**RESPECTFULLY RECOMMENDED** in Fort Myers, Florida on January 10, 2022.

*[signature]*
Mac R. McCoy
United States Magistrate Judge

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1. A party wishing to respond to an objection may do so in writing fourteen days from the filing date of the objection. The parties are warned that the Court will not extend these deadlines. **To expedite**

**resolution, the parties may also file a joint notice waiving the fourteen-day objection period.**

Copies furnished to:

Counsel of Record
Unrepresented Parties

Case 2:20-cv-00912-SPC-M_M   Document 46   Filed 01/10/22   Page 12 of 12 PageID 231